J-S43016-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: N.M.D. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: E.S., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 90 MDA 2016 |

Appeal from the Decree Entered January 4, 2016
In the Court of Common Pleas of Lancaster County
Orphans' Court at No(s): 1709 of 2015

BEFORE:  GANTMAN, P.J., PANELLA, J., and JENKINS, J.

MEMORANDUM BY PANELLA, J.                **FILED AUGUST 23, 2016**

Appellant, E.S. ("Father"), appeals from the decree entered January 4, 2016, in the Court of Common Pleas of Lancaster County, involuntarily terminating his parental rights to N.M.D. or N.D. ("Child") (born in September 2014), pursuant to the Adoption Act, 23 Pa.C.S. § 2511(a)(1), (2), (5), and (b).[1] We affirm.

Mother has a long history with Lancaster County Children and Youth Social Service Agency (the "Agency") since well before Child's birth. Child has two older siblings by Mother, neither of whom are Father's biological

_____

[1] T.N.A.D. a/k/a T.N.D. ("Mother") is not a party to this appeal nor did she file a separate appeal.

children. Child's older half-brother, O.M.D. ("Half-Brother") was adopted in 2011, and Child's older half-sister, A.D.D. ("Half-Sister") was adjudicated dependent and placed in foster care in 2012. On May 16, 2014, the Agency received a report that Mother was pregnant, using drugs, not receiving any prenatal care, and prostituting herself for a place to live. The Agency scheduled a home visit in May 2014, but the address provided to them was a place of business.

On September 13, 2014, the Agency discovered Mother gave birth to Child and tested positive for PCP, "a 'dissociative anesthetic'" whose "effects are trance-like, and patients experience a feeling of being 'out of body' and detached from their environment." Partnership for Drug Free Kids, available at http://www.drugfree.org/drug-guide/pcp/ (last visited 8/10/16). Although paternity was undetermined, Father was present for Child's birth, which was the first and only time he ever saw Child. Mother provided the Agency with names of several men as putative fathers for Child.

On September 16, 2014, Child was placed into the temporary physical and legal custody of the Agency. On September 24, 2014, the trial court accepted the master's recommendation that Child continue in foster care. Child was adjudicated dependent at an adjudication hearing on October 20, 2014. Mother was not offered a child permanency plan for reunification.

Nine days after Child's birth, Father was arrested and charged with possession with intent to deliver, possession with intent to distribute

narcotics, possession of a controlled substance, possession of marijuana, and possession of drug paraphernalia. The Agency discovered Father's location in prison and obtained a court order for genetic testing between Father and Child. The results of the genetic test established paternity between Father and Child.

On November 5, 2014, a child permanency plan was court-approved for Father, which set the goal of reunification with Child. Father's goals were: (1) to cooperate with the Agency to assess his current situation; (2) to improve mental health functioning to the extent he can care for Child; (3) to use good parenting skills; (4) to be financially stable in order to provide for himself and Child; (5) to obtain a home free and clear of hazard; and (6) to maintain ongoing commitment to Child.

On March 26, 2015, Father had a probation/parole violation hearing, resulting in a state prison sentence of one to two years. While incarcerated, Father sent six letters to the Agency pursuant to his ongoing commitment objective. Father also completed one relevant program, Violence Prevention, Moderate Intensity. Father was enrolled in a therapeutic community program, providing cognitive behavioral therapy, but was dismissed for, of all things, putting laxatives in the drinks of other program attendees. Father gained re-entry into the program only to be terminated again for smoking a cigarette in his cell. Father's initial release date, September 2015, was

deferred because of these two prison infractions. Father will be released from jail at the earliest in May 2016 or at the latest in September 2016.

On July 30, 2015, the Agency filed a petition to involuntarily terminate Mother's and Father's parental rights to Child. Mother signed a consent to adoption on August 12, 2015. On September 21, 2015, the trial court conducted a termination hearing and issued a decree terminating Mother's parental rights only. The trial court rescheduled the hearing for Father because he was unable to participate due to a connection problem at the prison.

At the rescheduled termination hearing on January 4, 2016, Ashley Zuver, the Agency caseworker, and Father testified. Father participated by telephone from Laurel Highlands Correctional Institution and was represented by counsel. On the same day, the trial court entered a decree involuntarily terminating Father's parental rights to Child. Thereafter, the trial court immediately held a permanency review hearing, ordering Child to remain at the pre-adoptive resource home and changing Child's permanency goal to adoption.[2]

---

[2] Father also filed a notice of appeal from the order changing the Child's permanency goal to adoption, which was assigned a separate docket number and is disposed of therein. *See In re N.D.*, 97 MDA 2016.

Father timely appealed. Father raises the following issue:[3]

1. Where Father was incarcerated prior to learning that he was the parent of a dependent child; where he, while incarcerated, initiated frequent contact with the Agency and sought visitation opportunities with his child; where there were few remedial programs available in prison; and where his maximum release date was less than a year from the date of the termination hearing, was it an abuse of discretion to grant the Agency's petition to terminate?

Father's Brief, at 11.[4]

Our standard of review regarding orders terminating parental rights is as follows:

---

[3] We note Father filed one brief, raising two issues in the statement of questions involved portion: (1) challenging the decree terminating his parental rights; and (2) challenging the order changing the child permanency goal to adoption. Because Father's appeal challenging the permanency goal to adoption has been assigned a different docket number, Father's second issue was omitted as it was addressed in *In re N.D.*, 97 MDA 2016.

[4] In his statement of errors, we note that Father asked this Court to consider whether the trial court erred in finding the Agency met its burden to terminate Father's parental rights under 23 Pa.C.S.A. § 2511(a)(8). Although the trial court stated, in its opinion, that the Agency requested termination under subsections (a)(1), (2), (5), and (8), we note the Agency only sought termination pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), and (5) as to Child. *See* Petition for Involuntary Termination, 7/30/15, at 3.

Additionally, the trial court entered a decree terminating Father's parental rights under subsections (a)(1), (2), and (5). *See* Decree, 1/4/16, at 1-2. Therefore, this issue is moot. Additionally, Father waived this issue because he did not raise it in his brief. *See Krebs v. United Refining Co. of Pa.*, 893 A.2d 776, 797 (Pa. Super. 2006).

When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re S.H.*, 879 A.2d 802, 805 (Pa. Super. 2005) (citation omitted). In termination cases, the burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *See id*. at 806.

The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. *See In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004). If competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result. *See In re Adoption of T.B.B.,* 835 A.2d 387, 394 (Pa. Super. 2003). Additionally, this Court "need only agree with [the trial court's] decision as to any one subsection in order to affirm the termination of parental rights." *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

In terminating Father's parental rights, the trial court relied upon sections 2511(a)(1), (2), and (5), and (b) of the Adoption Act. We need only agree with the trial court as to any one subsection of § 2511(a), as well

as § 2511(b), in order to affirm. ***See In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Here, we analyze the trial court's decision to terminate under § 2511(a)(2) and (b), which provide as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . .
>
> > (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
> >
> > . . .
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

To terminate parental rights pursuant to § 2511(a)(2), the moving party must produce clear and convincing evidence regarding the following elements: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or

refusal cannot or will not be remedied. *See In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003).

"The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002) (citations omitted).

Further, parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. *See In re A.L.D.* 797 A.2d 326, 340 (Pa.Super. 2002). A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous. *See id.*

In *In re Adoption of S.P.*, 47 A.3d 817 (Pa. 2012), our Supreme Court addressed the relevance of incarceration in termination decisions under § 2511(a)(2). There, the Court held that

> incarceration is a factor, and indeed can be a determinative factor, in a court's conclusion that grounds for termination exist under § 2511(a)(2) where the repeated and continued incapacity of a parent due to incarceration has caused the child to be without essential parental care, control or subsistence and that the causes of the incapacity cannot or will not be remedied.

*Id*., at 828.

With respect to § 2511(b), this Court has explained the requisite analysis as follows:

[S]ubsection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa.Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id*. However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa.Super. 2008). Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. *Id*. at 63.

*In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010).

Instantly, Father contends that the trial court abused its discretion in terminating his parental rights as the evidence showed Father made a good faith effort to be involved in Child's life and worked on his child permanency plan to the extent possible while incarcerated. *See* Father's Brief, at 18. Father argues that the trial court failed to consider his criminal acts were not part of the original reasons for Child's removal and all of his criminal activities preceded his knowledge of fathering Child. *See id*. at 17-18. Father submits that there is no support for the trial court's conclusion that reunification would necessarily or probably take considerable time after Father is released from prison. We disagree.

The Agency caseworker, Ashley Zuver, testified from her knowledge and familiarity with the records of the Agency. Zuver provided the trial court with the history of the case concerning the circumstances leading to the

placement in foster care of Child, Father's criminal history, which dates back to 2006, and Father's child permanency goals. **See** N.T., 1/4/16, at 7-12. Zuver informed the trial court that, while incarcerated, Father cooperated with the Agency, completed one relevant program, and sent the Agency six letters regarding Child. **See id**. at 8-12. Zuver testified that Father has not completed an Agency-approved parenting program, drug and alcohol evaluation or mental health evaluation, due to his incarceration. **See id**. at 9-12. Zuver further testified that Father has not fulfilled his goals of being financially stable or obtaining a hazard-free home due to his incarceration. **See id**. at 12. Zuver stated that Father was hoping to be released in the fall of 2015, but the date was revoked because Father received two prison misconducts (spiking his peers' drinks with laxatives and smoking in his cell) and was kicked out of a plan-related program twice. **See id**. at 11.

Father provided the trial court with additional information regarding his criminal history. Father testified that he received a two-year probation sentence in 2010 for possession with intent to deliver. **See id**. at 26. Father admitted that since sentencing in 2010, he has been in and out of prison due to six probation/parole violations, which includes his recent arrest. **See id**. at 27. Father testified that he will be released in September 2016 at the latest, but could possibly be released as early as May 2016. **See id**. at 29. Father testified that after he is released from prison, he plans to live at his mother's house and obtain a job from a friend at a crab shop. **See id**. at 32.

The trial court concluded the Agency met its burden to terminate Father's parental rights. *See* Trial Court Opinion, 2/10/16, at 6. The trial court noted Father has spent most of Child's life in prison due to six probation/parole violations and two prison misconducts, which have all lengthened his prison term. *See id*. at 6. Although Father expressed his intent to parent and desire to work on his child permanency plan immediately upon release, the trial court concluded Father's actual actions have not served to carry out his intent to parent or his intent to accomplish his child permanency plan. *See id*. at 7. The trial court recognized that while prison makes it difficult for Father to comply with his child permanency plan, Father's two prison infractions not only removed him from a plan related program but also increased his prison term, thereby delaying his ability to parent Child. *See id*.

Due to the lack of evidence, the trial court was not persuaded by Father's argument that, if Child was born prior to the date of his most recent drug offense, he would have not committed the crime. *See id*. at 7-8. The trial court reasoned that, even after he knew of her existence, Father was not able to impose self-discipline or good judgement to remain out of prison and be available to Child. *See id*. at 8. Moreover, the trial court found that, even if Father is released sometime in 2016, Child's immediate need for permanency in her life would be on hold as it will take Father several months to complete his child permanency plan, and there is no guarantee that

Father will actually follow through with his child permanency plan, based on his history. *See id*. at 9.

We conclude Father's arguments regarding subsection (a)(2) essentially seek for this Court to make credibility and weight determinations different from those of the trial court. This we cannot do.

Although Father may love Child and desire an opportunity to serve as Child's father, a parent's own feelings of love and affection for a child, alone, will not preclude termination of parental rights. *See In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010). A child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." *In Re Z.S.W.*, 946 A.2d 726, 732 (Pa. Super. 2008) (citations omitted). Rather, a parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill his parental duties, to the child's right to have proper parental care. *See In re Z.P.*, 994 A.2d at 1120.

We find the competent evidence in the record supports termination of Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2) in that Father's repeated and continued incapacity, abuse, neglect, or refusal due to six probation/parole violations and two prison misconducts has caused Child to be without essential parental care, control, or subsistence necessary for her physical or mental well-being. In addition, the causes of Father's incapacity, neglect, or refusal cannot or will not be remedied in that there is

no record evidence related to when Father will be able to provide essential parental care to Child. Thus, the trial court did not abuse its discretion in terminating Father's parental rights under section 2511(a)(2).

Next, despite raising a § 2511(b) claim in his concise statement, Father failed to preserve this claim in his statement of questions involved portion of his brief on appeal, thereby waiving this issue. **See Krebs**, 893 A.2d at 797. Additionally, Father has waived this issue for failure to discuss § 2511(b) in his brief. **See Lackner v. Glosser**, 892 A.2d 21, 29-30 (Pa. Super. 2006). **See also** Pa.R.A.P. 2119. We, therefore, find that Father waived any challenge to the involuntary termination of his parental rights under § 2511(b).

Even if Father had preserved this issue we would find that the trial court committed no abuse of discretion.

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." **In re K.M.**, 53 A.3d 781, 791 (Pa. Super. 2012). In **In re E.M.**, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. **In re K.M.**, 53 A.3d at 791.

**In re T.S.M.**, 71 A.3d 251, 267 (Pa. 2013).

- 13 -

Here, Zuver stated that Child was currently in a resource home with her older Half-Sister. ***See*** N.T., 1/4/16, at 14. Zuver stated that both children are thriving at the resource home. ***See id***. at 15. Zuver testified that Child has learned to crawl and is currently learning to walk at the resource home. ***See id***. at 14. Zuver stated that Child has a significant bond with Half-Sister, and Child's face lights up when she sees and hears Half-Sister enter the room. ***See id***. at 14-15. Zuver also testified that Half-Sister is very protective of Child. ***See id***. Zuver opined that it was in the best interest of Child to terminate Father's parental rights so that she may be adopted and have a stable permanent home. ***See id***. at 14. Zuver believes that prolonging Child's foster care and not allowing her stability and permanency in her life would cause her more harm than termination of Father's parental rights. ***See id***.

The trial court found that Father's assertion that Child, a fifteen-month-old, is not affected or harmed by the absence of Father in her life, affirms Child has absolutely no bond with him, does not miss him, and believes herself to be a child of the resource home as she is unaware of his existence. ***See*** Trial Court Opinion, 2/10/16 at 9-10. The trial court found Father acted volitionally in a way to prolong his prison experience and his time away from Child, and is without a reliable history that would lead the court to accept his intentions to comply with his child permanency plan. ***See id***. at 10. The trial court determined that Father's reentry into her life at this

late stage would have a negative developmental, physical and emotional effect on Child. *See id*. The trial court opined that Father's letters to the Agency and his future intentions to parent cannot be a reason to prolong Child's time in placement, only to be removed from her adoptive family and her Half-Sister in order to live with a complete stranger. *See id*. The trial court found Child has developed a meaningful bond with her Half-Sister and considers her resource parents to be her parents. *See id*. at 11. The trial court opined that Child is thriving at her respective home and there is no support Father will ever be available to parent her as his parental capacity is unknown at the time. *See id*. The trial court concluded that the best interest of Child will be served by remaining with her resource parents and Half-Sister, as she does not know Father and there is no bond between them. *See id*.

Upon review, there is no evidence of a bond of any nature between Father and Child. It was eminently reasonable for the trial court to conclude that no bond exists between them. Based on the foregoing testimonial evidence and the relevant case law, we discern no abuse of discretion or legal error by the trial court in concluding that terminating Father's parental rights will serve the developmental, physical, and emotional needs and welfare of Child.

Accordingly, because we conclude that the trial court did not abuse its discretion by involuntarily terminating Father's parental rights pursuant to § 2511(a)(2) and (b), we affirm the decree of the trial court.

Decree affirmed.


Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/23/2016